CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

WILLIAM ROBINSON,  )          CASE NO. 7:18-CV-00138
    Petitioner,  )

v.  )

DAVID W. MAWYER, et al.,  )          By: Hon. Michael F. Urbanski
    Respondents.  )          Chief United States District Judge

## MEMORANDUM ORDER

William Robinson, currently being held at the Prince William - Manassas Regional Adult

Detention Center, complains that his constitutional rights and rights under Virginia state law were

violated while he was a patient at Western State Hospital in Staunton, Virginia (WSH). Proceeding

pro se, Robinson filed this lawsuit seeking relief via 42 U.S.C. § 1983. Defendants Mary Clare

Smith, M.D., David W. Mawyer, Eugene Simopolous, M.D., Brian Kiernan, Sgt. Kaleigh Bishop,

Sgt. Matthew Mercer, Sgt. Andrew Wilhelm, Sgt. Brad Carter, and Trent Humphries, all

employees of WSH, have filed a motion to dismiss. ECF No. 33. Defendants Douglas Brydge, a

Virginia State Trooper, and Liz Garvey, an adult protective services worker employed by

Shenandoah Valley Social Services, filed separate motions to dismiss. ECF Nos. 36, 41. Robinson

responded to the motions to dismiss, making this matter ripe for disposition.

Also pending is Robinson's motion to amend his complaint to allege that all defendants

acted under color of state law in their individual and official capacities. He also seeks to add

unknown staff members whom he alleges were directly in charge of security in his unit. ECF No.

45. For the reasons set forth below, the motion to amend is **GRANTED**; the motions to dismiss

are **GRANTED** and Robinson's lawsuit is **DISMISSED** in its entirety for failure to state a claim.

## BACKGROUND

### I. Factual Allegations

The following facts, which are taken from Robinson's complaint, the motions to dismiss, his response to the motions to dismiss, and all the attached exhibits, are accepted as true for purposes of the defendants' motions.[1] On April 21, 2017 Robinson was admitted to WSH via an order for a psychological evaluation by the Prince William County Circuit Court. ECF No. 34-1 at 1. He was facing charges of abduction, attempted robbery, conspiracy to commit robbery, failure to appear, grand larceny, possession of a firearm by a convicted felon, and use of a firearm in commission of a felony. ECF No. 34-3 at 1.

In the evening of May 5, 2017, Robinson was lying in his room trying to sleep when a female patient entered his room and climbed into his bed. He got up and told her to leave but she would not. He did not know what to do and did not want to get in trouble so he left his room. When he returned, she was still in his bed. He told her to leave and snatched the covers off the bed. She reached up and grabbed his sweat shirt and pulled him down on top of her, locked her legs around him, and told him that if they would have sex, she would leave. Because he wanted her to leave and did not want to get in trouble, they had sex. The woman still would not leave his room, so he left again and when he returned to the room, she finally left the room and he locked the door. She returned and began knocking on the locked door and telling him to let her in, but he refused. At that point the staff saw her and removed her from

---

[1] See Canady v. Hodges, No. 7:17CV00464, 2018 WL 3146792 (W.D. Va. 2018) (construing additional facts in pro se response as amendments to complaint) and Scates v. Doe, No. 6:15-2904-MFS-KFM, 2016 WL 8672963 (D.S.C. 2016) (noting that in evaluating a motion to dismiss, courts evaluate the complaint in its entirety, including documents that are integral to and relied on in the complaint when there is no question as to their authenticity).

in front of his room. ECF No. 1 at 5. The next day, the same female patient pinned Robinson with her body in the phone booth area and staff had to remove her.

On May 7, 2017, Robinson told two members of his treatment team what had happened and told the entire team the next day. ECF No. 1 at 3, 5, 6. His team was aware of what had happened and told him that members of the security staff were going to talk to him. On May 9, 2017 he told security staff members what had happened and that the female patient continued to harass him, including an episode earlier that day when she had trapped him in the television room and staff had to remove her. ECF No. 1 at 3. On May 12, 2017 staff moved Robinson to another area of the hospital, which he described as "harsher." Id. When he was moved to the new unit he fought with the administration over education, food, water, and safety and was forced to do things that "got [him] assaulted." He also alleges that his treatment team stopped seeing him and providing him with any type of therapy. Id.

An investigation was started based on an order by defendant Dr. Simopolous. ECF No. 40-1 at 1-2. According to an investigation report, defendant Humphries, the facility investigator, directed defendant Wilhelm to interview Robinson and also to review video of the entrance of Robinson's room on the evening of May 5, 2017. Video files were made of footage taken from 9:24 to 9:26 p.m., 10:22 to 10:39 p.m., and 12:38 a.m. to 12:42 a.m. Video showed the female patient entering Robinson's room, and showed Robinson leaving his room several times while she remained inside. The last video file showed two staff members redirecting the woman away from Robinson's bedroom door. There was no video recorded inside the room. ECF No. 40-1 at 3. Wilhelm noted that during these time periods staff appeared to be conducting their thirty-minute checks. Id.

Robinson described to Wilhelm the same incident he describes here. In addition, Robinson told Wilhelm that the female patient was telling other patients that Robinson was the father of her three children and that she followed him throughout the unit, touching him, grabbing him, and pinning him against the patient phones. Id. at 2. He further told Wilhelm that he was in fear and the situation was affecting his anxiety and depression. Id.

Wilhelm noted that Robinson had reported the incident to students who passed it on to Dr. Simopoulos, who ordered the investigation. The facility director, defendant Mawyer, asked defendant Mercer to conduct an investigation, which led to Wilhelm conducting the interview and pulling the video footage. Id. at 2-3.

Another member of the security staff, defendant Carter, interviewed the female patient. Her thoughts were disorganized, but when asked directly if she went into someone else's bedroom on the night of May 5, 2017, she said that she did. She identified the patient as "William" and said he had kept telling her to go to his room, so she did. She said he pulled his pants down and said, "I don't have all day." He asked her to turn around and when she would not, they both left the room, but later returned. When asked if anything physical happened in the bedroom, she said they had intercourse and she knew it was wrong. When asked if both parties were agreeable to the intercourse, she said, "Yea, it was." ECF No. 40-1 at 3-4.

At some point, another member of the security staff, defendant Bishop, spoke with Robinson, who told her that his statement had not changed, but that the female patient was still bothering him. Bishop also noted that she spoke to Dr. Simopoulos about the female patient's competency to consent to sexual intercourse, but he said the patient had not been at the hospital long enough for him to provide an appropriate answer. Id. at 4.

Based on the interviews with Robinson and the female patient, director Mawyer decided to call the state police to further investigate. Defendant state trooper Brydge went to the hospital where he spoke with Dr. Simopoulos and told him about Robinson's pending criminal charges. Other defendant staff members, including Mawyer, Humphries, Dr. Kiernan, and adult protective services employee Liz Garvey, were told about the charges. Dr. Kiernan advised that WSH was aware of the charges, and that the hospital would move Robinson to another unit because of recent events and also because of the violent nature of the charges against him. ECF No. 40-1 at 5.

Trooper Brydge advised that the allegations of sexual assault were a "he said she said" situation and that he was not going to investigate further because the parties had been interviewed by hospital staff. All parties agreed with his conclusion. Id. Humphries reported that he and Garvey concluded that Robinson's allegations against the female patient were unfounded. Id. He added an "Administrative Issue" that sergeants Wilhelm, Mercer, and Carter needed to remember to always follow Hospital Instruction #4040 when confronted with an allegation of sexual misconduct. Id. at 5-6.

At some point after the incident, the Disability Law Center of Virginia mailed a Human Rights Complaint to defendant Mary Clare Smith, the current facilities director at WSH.[2] The complaint alleged that Robinson was pursuing relief through the Human Rights Complaint process because he was denied due process when the hospital failed to conduct an investigation into his alleged sexual assault. ECF No. 40-1 at 7. The complaint alleged that the

---

[2] The complaint was filed pursuant to 12 VAC 35-115-175, which describes the process by which an individual can file a complaint against health care providers that are licensed, funded, or operated by the Virginia Department of Behavioral Health and Developmental Services.

hospital was supposed to initiate an impartial investigation into, or resolution of, the complaint as soon as possible, but no later than the next business day. Instead, the hospital waited two days to begin the investigation and did not initiate a "201" investigation at all. Id.

As relief, Robinson asked for an apology for WSH's failure to protect him and provide him with a safe environment, for not having followed WSH's policies and procedures, and for not having conducted an internal investigation of his complaint. He also asked that staff be retrained on "manning their post[s] and following procedures when incidents are reported." Finally, since he had been readmitted to WSH, he asked not to be assigned to groups with or in close proximity to the female patient. Id. at 8.

Smith responded to the letter on December 7, 2017. She said that the hospital took action the same day Robinson reported the incident by interviewing him and placing the female patient on increased monitoring. She acknowledged that WSH did not take steps to address his discomfort and that they could have done so by transferring him to a different unit in a more timely manner. Id. at 9. Smith also reported that the hospital completed an internal review of his complaint, including a review of staff performance of assigned duties, and determined that they were carried out as required. To increase protection of all clients at WSH, steps were taken to ensure that bedroom doors were closed while clients were sleeping at night and the doors were then locked by staff so that the rooms could not be accessed by anyone other than staff. Finally, Smith noted that when Robinson was readmitted to WSH, he was housed in a separate area and floor from the female patient. Id.

The Disability Law Center of Virginia responded to Smith and asserted that the hospital was out of compliance with the human rights regulations because it did not investigate the

assault and respond to Robinson within twenty-four hours of his complaint and never conducted a "DI 201" investigation. In addition, Robinson continued to ask for an acknowledgment of WSH's alleged wrong-doing and an apology. Finally, he asked to have his human rights complaint treated in accordance with 12VAC35-115-175. Id. at 10. There is no response from WSH to the second letter in the file.

## II. Causes of Action

Robinson makes the following claims: (1) The sexual assault in his room, the assault by the patient telephones, and the fact that he was forced to stay around the female patient from May 7, to May 12, 2017 constituted negligence and mental and emotional and abuse on the part of the WSH defendants; (2) The investigation, ordered by defendant Humphries and conducted by defendants Wilhelm, Carter, Mercer, and Bishop, was done poorly, which also was negligent; (3) The failure to remove the female patient immediately was negligent and abusive; (4) After he was moved to another unit, his new treatment team stopped all treatment, which he alleges was negligent and retaliatory; (5) Defendants Humphries and Garvey failed to talk to him or offer him counseling which was negligent; (6) The security officer defendants were negligent for failing to protect him while he was at WSH; (7) Defendant Humphries was negligent for failing to follow investigative policies resulting in neglect and abuse; (8) Defendants Smith and Mawyer were negligent for allowing staff to make poor decisions which resulted in Robinson being neglected, abused, and assaulted from May 5, 2017 through May 31, 2017; (9) Defendants Smith and Humphries retaliated against Robinson by having him declared competent and discharged on May 31, 2017; (10) Defendant Smith was negligent for not accepting responsibility for the actions of WSH employees; (11) Staff that was on duty on

the night of May 7, 2017 failed to protect him from assault; (12) Staff on duty after May 9, 2017 failed to protect him from the female patient from that date until May 12, 2017; and (13) Defendants Brydge, Humphries, Kiernan, Garvey, and Simopoulos conspired to deny Robinson due process by not allowing him to press charges and have his allegations heard by the court system. In a motion to amend filed on October 5, 2018, Robinson alleged that all defendants acted under color of state law and acted in their individual and official capacities. He also asked to name as defendants the unknown staff persons in his unit who were on duty at the times he as assaulted and harassed. Robinson seeks $5,000,000 in damages.

In their motions to dismiss, the WSH defendants and defendant Brydge argue that this court lacks subject matter jurisdiction over Robinson's claims, that Robinson has failed to state a claim for relief, and that they are entitled to qualified immunity. Defendant Garvey argues in her motion to dismiss that Robinson has failed to state a claim against her.

## DISCUSSION

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

The WSH defendants and defendant Brydge move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), alleging that this court lacks subject matter jurisdiction. They argue that because Robinson claims that many of the defendants' actions were negligent or abusive, that he is alleging only state law causes of action and has failed to allege violation of a constitutional right. In addition, they argue that to the extent Robinson is bringing a due process claim based on any of his allegations, he is attempting to inflate state law tort causes of action into constitutional claims via misuse of the Fourteenth Amendment. They cite Paul v. Davis, 424 U.S. 693, 701 (1976), for its holding that the Fourteenth Amendment does not by its own

force extend to plaintiffs a right to be free from all injury where the State may be characterized as a tortfeasor.

It is well established that a document filed pro se is to be liberally construed and a pro se complaint, regardless of how inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520-521 (1972). A liberal reading of Robinson's complaint, combined with his responses to the motions to dismiss, indicate that at the very least he is attempting to plead substantive due process claims against the WSH defendants based on (1) the alleged sexual assault and continued harassment by the female patient; (2) the alleged failure to properly investigate his sexual assault allegations claims against those defendants involved in the investigation (3) the decision not to pursue criminal charges; and (4) the alleged retaliation that followed his reporting. Accordingly, the court finds that it has subject matter jurisdiction over these federal claims.

## II.  Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, the court accepts "the well-pled allegations of the complaint as true" and "construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not accept as true "'legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement, . . . unwarranted inferences, unreasonable conclusions, or arguments.'" Richardson v. Shapiro, ___ Fed. Appx. ___, 2018 WL 4520372 (4th Cir. 2018) (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)) (internal quotation marks omitted). Thus, a complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196-197 (4th Cir. 2009) (affirming dismissal of claim that simply stated a legal conclusion with no facts supporting the allegation) and King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim.") (quoting Iqbal, 556 U.S. at 679).

## III. Liability under 42 U.S.C. § 1983

To prevail on a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish (1) that he has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States and (2) that the conduct about which he complains was committed by a person acting under color of state law. Dowe v. Total Action Against

Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998). Claims for violation of substantive due process are actionable under § 1983. Zinermon v. Burch, 494 U.S. 113, 125 (1990).

Claims brought against defendants in their official capacities are not cognizable in § 1983 lawsuits because neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, a claim brought against an official in his or her official capacity is not considered a suit against the official, but rather a suit against the official's office. Because the Eleventh Amendment prohibits courts from entertaining an action against the state, Alabama v. Pugh, 438 U.S. 781, 782 (1978), it also prohibits courts from considering claims against defendants in their official capacities. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996).

Robinson has sued the defendants in both their individual and official capacities. Accordingly, any claims Robinson brings against defendants in their official capacities are dismissed.

### A. Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Stated another way, "[q]ualified immunity protects officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" Booker v. South Carolina Dept. of Corrections, 855 F.3d 533, 537-538 (4th Cir.

2107) (citing Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)).  The doctrine

weighs the need to hold public officials accountable for irresponsible exercise of power against

the need to shield officials from harassment, distraction, and liability when they perform their

duties responsibly.  Booker, 855 F.3d at 538 (citing Pearson, 555 U.S at 231).

In performing a qualified immunity analysis, a court must first determine the specific

right that the plaintiff alleges was infringed by the challenged conduct.  Id. (citing Winfield v.

Bass, 106 F.3d 525, 530 (4th Cir. 1997) (en banc)).  The court then must ask whether a

constitutional violation occurred and whether the right violated was clearly established at the

time the official violated it.  The questions need not be asked in a particular order.  Id. (citing

Melgar ex rel. Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010) and Pearson, 555 U.S. at

236).  The plaintiff bears the burden of showing that a constitutional violation occurred, while

the defendant bears the burden of showing entitlement to qualified immunity.  Purnell, 501

F.3d at 377.

### B. Supervisory Liability

The doctrine of respondeat superior does not apply to § 1983 claims.  Monell v. Dep't

of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Liability of supervisors is

premised upon "a recognition that supervisory indifference or tacit authorization of

subordinates' misconduct may be a causative factor in the constitutional injuries they inflict

on those committed to their care."  Slaken v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984).

The Fourth Circuit has set forth three elements necessary to establish supervisory liability

under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was
> engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional

> injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. . . .
>
> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slaken, 737 F.2d at 373. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury. Id. at 373-374.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (other internal citations omitted). A plaintiff

may establish deliberate indifference by showing a supervisor's "'continued inaction in the face

of documented widespread abuses.'" Id. (citing Slaken, 737 F.2d at 373). Proof of causation

may be direct or it may be supplied by the tort principle that holds a person liable for the

natural consequences of their actions. Id. (citing Slaken, 737 F.2d at 376).

## IV. Fourteenth Amendment Substantive Due Process

"Involuntarily committed patients in state mental health hospitals have a Fourteenth

Amendment due process right to be provided safe conditions by the hospital administrators."

Ammons v. Washington Dept. of Social and Health Services, 648 F.3d 1020, 1027 (9th Cir.

2011). "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions,

it must be unconstitutional to confine the involuntarily committed—who may not be punished

at all—in unsafe conditions." Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982).

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200 (1989).

The Constitution requires that courts make certain that professional judgment is exercised. Youngberg, 457 U.S. at 321. A decision, if made by a professional,[3] is presumptively valid. "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. In Patten v. Nichols, 274 F.3d 829, 843 (4th Cir. 2001), the Fourth Circuit noted the following:

> Beyond recognizing that the standard requires proof of more than mere negligence, courts have had some difficulty determining precisely how far the professional judgment standard falls from negligence on the culpability continuum." Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir. 1992) (doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 790 (2d Cir. 1983) (stating that in Youngberg, "the Court adopted what is essentially a gross negligence standard"); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990) ("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Nevertheless, it is clear that evidence showing a mere departure from that applicable standard of care is insufficient to show a constitutional violation. Patten, 274 F.3d at 845. The court will examine Robinson's claims in light of this standard.

---

[3] The Youngberg court defined "professional decisionmaker" as a person competent, whether by education, training, or experience, to make the particular decision at issue. Day-to-day decisions regarding care, including decisions that must be made without delay, necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons. Youngberg, 457 U.S. at 323 n. 30.

## A. Initial Assault

Robinson does not allege that any of the named defendants were present on the evening of the alleged assault. Nor does he assert that they had knowledge that the assault was going to happen and failed to prevent it. Thus, it is clear that he has failed to state a claim that any of the named defendants violated his rights by failing to stop the assault.

Robinson also names as defendants the unknown staff members who were directly in charge of securing his unit and it is assumed for purposes of this motion that Robinson would be able to learn the names of the staff members who were present. As discussed above, conduct which amounts to no more than simple negligence does not constitute a violation of the right to substantive due process. Robinson alleges that when he discovered the female patient in his room, he left because he was afraid of getting in trouble, but then returned and had sex with her so that she would leave. At no point did he alert staff that the female patient was in his room or that he was having any sort of trouble with her and nothing in his allegations indicates that any staff member was aware of what was happening in his room.

While it is possible that staff could have been more attentive to the whereabouts of the patients, Robinson's allegations simply do not describe a constitutional violation on the part of the staff members. See Beck v. Wilson, 377 F.3d 884, 890-891 (8th Cir. 2004) (finding that neither failure to conduct "face checks" of patients during twenty to thirty-minute time period nor being absent from the nurse's station to fill medications at time patient was being assaulted amounted to more than mere negligence) and Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1143 (3rd Cir. 1990) (finding that single incident of failing to keep watch over mentally disabled person which resulted in his leaving or being taken to another area and sexually assaulted was

"isolated mishap" and did not amount to more than mere negligence). Accordingly, Robinson has failed to allege a constitutional cause of action based on the initial assault against any named or unnamed defendant and those claims are dismissed.

## B. Additional Assaultive Behavior

Robinson claims that the female patient assaulted him again the next day, May 6, 2017, when she pinned him to the wall with her body. When the staff saw what she was doing, someone came and removed her. At that point, Robinson had not yet reported the sexual assault to his treatment team and therefore none of the defendants were aware of the female patient's behavior. Therefore, for the same reasons that Robinson did not state a cause of action based on the initial assault, he cannot base a cause of action on the second assault because he cannot show the assault occurred because a professional employee substantially departed from accepted judgment, practice, or standards.

Robinson reported the incident to student workers on May 7, 2017 and on May 8, 2017 he told his entire treatment team what had happened. He claims that on May 9, 2017 the female patient trapped him in the television room and staff once again removed her. In addition, he was forced to continue to be around her until May 12, 2017 when he was moved. While it undoubtedly was uncomfortable to be around the patient, the staff responded to the female patient's actions by removing her from Robinson's presence and he does not allege that she touched him after May 6, 2017. Construing the factual allegations in the light most favorable to Robinson, the actions of the female patient, described as trapping him in the television room and being in his presence for three or four days, do not rise to the level of

violations of his right to reasonable safety. Accordingly, claims against all defendants based on the assaults and harassing behavior are dismissed for failure to state a claim.

## C. Investigation

Robinson contends that defendants involved in the investigation of the sexual assault claim did a poor job. Construing his pleadings liberally and giving him the benefit of the doubt, the court reads the allegation as a claim that the investigation was so deficient that it violated his right to substantive due process. Robinson asserts that the investigators did a poor job of interrogating the female patient because in the report of the investigation, it does not appear that the investigators asked her about specific allegations Robinson made, such as his asking her to leave several times and her pulling him down on top of her. He singles out defendant Humphries for failing to follow investigation policies and procedures. He also avers that the investigators treated the female patient like the victim in the assault and that his treatment team began to treat him as if he had assaulted her.

The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). In the context of an Eighth Amendment deliberate indifference claim, "failure to investigate" may become actionable when a plaintiff is trying to show that a supervisor was aware of a previous pattern of conduct and failed to investigate it, leading to further incidents. Lavender v. City of Roanoke, 826 F.Supp.2d 928, 935-936 (W.D. Va. 2011). Robinson is not making such a claim here and his "failure to investigate" allegation, standing alone, does not state a claim for violation of a constitutional right.

Nor does an allegation that a state actor violated a WSH policy, without more, amount to a constitutional violation. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (stating that violation of state-created procedures does not violate the constitution if the plaintiff otherwise received process he was due) and Morris v. City of Danville, Va., 744 F.2d 1041, 1048 n. 9 (4th Cir. 1984) (noting that the mere fact that a state agency violates its own procedures does not mean it has contravened federal due process requirements). Thus, to the extent Robinson complains that WSH did not follow its own investigative policies, he has failed to state a claim for a due process violation.[4] Claims against Humphries, Wilhelm, Carter, Mercer, and Bishop based on the investigation are dismissed.

## D. Retaliation and Failure to Move Female Patient

Robinson claims that after he complained about the sexual assault, he suffered retaliation when WSH staff moved him to a harsher environment and made a premature finding that he was competent, resulting in his discharge back to jail. To state a claim of retaliation based on protected speech, a plaintiff must allege that (1) the speech was protected; (2) the alleged retaliatory action adversely affected the protected speech and (3) a causal relationship existed between the protected speech and the retaliation. Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015). A bare assertion of retaliation does not state an actionable claim. Twombly, 550 U.S. at 555. Moreover, it is not enough to state a claim that the protected

---

[4] Moreover, even if there were a constitutional right to an investigation under these circumstances, Robinson has not pleaded facts showing that the WHS investigation in this case was inadequate. Investigators interviewed Robinson and the female patient and reviewed a video recording of the hallway outside Robinson's room. The female patient admitted having intercourse with Robinson but said it was consensual. The fact she did not admit to sexually assaulting Robinson is not a reflection on the adequacy of the investigation.

expression played a role or was a motivating factor in the retaliation. Rather a plaintiff must show that "but for" the protected speech, the defendant would not have taken the alleged retaliatory action. Am. Civ. Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785-786 n. 6 (4th Cir. 1993).

In this case, Robinson makes a bare allegation that he was moved to a harsher environment following the investigation. First, he did not describe the conditions in the new environment, other than to say he was getting into arguments with staff and that someone "forced [him] to do things that got [him] assaulted." ECF No. 1 at 3. Second, the notes from the investigation reflect that Dr. Kiernan advised that Robinson was going to be moved to Unit 2 Elm "due to the recent events and the violent crimes" that he was accused of committing prior to being admitted to the hospital. ECF No. 40-1 at 5. Thus, it does not appear that Robinson has pleaded sufficient facts to show that "but for" his complaint, he would not have been moved.

In addition, Robinson has not pleaded facts sufficient to overcome the presumption set out in Youngberg that liability may be imposed on a professional only if a decision was such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the professional actually did not base the decision on such a judgment. Robinson asked to be kept away from the female patient and while he may well have preferred that she, rather than he, be moved, he has not pleaded facts to show that Dr. Kiernan's decision to move him and not her was not based on professional judgment.

Robinson also claims that after he was transferred to the new unit, his treatment team refused to treat him. His allegation that the failure to treat him was retaliatory is a legal

conclusion unsupported by facts. Additionally, Robinson was only in the new unit for approximately three weeks until he was discharged. Even if the failure to treat him in that period were negligent, the professional judgment standard is not a malpractice standard and a departure from accepted professional judgment must be substantial to give rise to liability. Patten, 274 F.3d at 845 (citing Youngberg, 644 F.2d at 178). Robinson has failed to state a claim based on his allegation that his was not treated after his transfer.

Regarding his discharge, a document submitted by the WSH defendants shows that the order that Robinson be evaluated was entered on April 7, 2017 and received by the Department of Behavioral Health and Developmental Services on April 11, 2017. The evaluation was due on May 26, 2017. ECF No. 34-1 at 1. Robinson was admitted to WSH on April 21, 2017. ECF No. 34-3 at 1. Although the initial evaluation is not in the record, on May 26, 2017 the circuit court ordered that Robinson be treated in an effort to restore him to competency. ECF No. 34-2.

Robinson asserts that he was discharged on May 31, 2017 following a finding that he was restored to competency. He contends that the fact that he was found competent and eligible for discharge only five days after he was ordered treated indicates that the discharge was retaliatory based on his having complained of sexual assault.

Defendants submitted a letter from a clinical psychologist to the circuit court judge dated August 14, 2017 which refers to the discharge. ECF No. 34-3. The psychologist notes that at the time of his discharge, Robinson was diagnosed only with opioid use disorder and stimulant use disorder. He was not prescribed any scheduled mental health medications during his stay because he showed no need for them. He was able to recount details of the alleged

sexual assault and after he was transferred to the new unit, he could accurately describe the differences between the old unit and the new unit. However, he declined to discuss his legal situation when given an opportunity to do so. He showed no evidence of hallucinations or delusions. In addition, staff heard him talking with peers about how to appear mentally ill in order to stay in the hospital longer. Id. at 2.

Robinson has not overcome the presumption that the discharge decision was made by a professional staff member and in accordance with accepted standards. Accordingly, his claims against defendants Smith and Humphries based on his transfer to another unit and discharge from WSH are dismissed for failure to state a claim.

### E. Failure to Bring Charges

Robinson asserts that defendants Brydge, Humphries, Kiernan, Garvey, and Simopoulos conspired to deny him due process by not allowing him to press charges and have his allegations heard by the court system. As an initial matter, the WSH defendants and Garvey are not law enforcement officers and did not have authority to make a decision about whether to proceed with criminal charges against the female patient. Therefore, Robinson has failed to state a claim against them for conspiracy to deny him due process.

Brydge was the state trooper who went to WSH to investigate Robinson's allegations and stated that he declined to pursue the matter further because it was a "he said she said" situation. Although Robinson claims this decision violated his constitutional rights, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). See also Smith v. McCarthy, 349 Fed. Appx. 851, 859, 2009 WL 3451714 (4th Cir. 2009) (commenting that because plaintiffs in §

1983 action had no right to a criminal investigation or prosecution of another, they failed to allege violation of a clearly established statutory or constitutional right) and <u>Riley v. Patterson</u>, No. 9:07-2655-HFF-GCK, 2007 WL 2471203 at * 2 (D. S.C. 2007) (finding that § 1983 claim that a prisoner's constitutional rights were violated by lack of criminal prosecution of another did not state a viable legal claim and collecting cases). Thus, Robinson has failed to state a claim for violation of his right to due process on these facts and this claim is dismissed against all defendants.

### F. Failure to Provide Counseling

Robinson also alleges that defendant Garvey, an adult protective services worker, failed to aid, counsel, and assist him after he was sexually assaulted. He complains that she "was and is a responsible party in denying plaintiff due process and neglecting this patient all together [sic]." ECF No. 44 at 1. However, as discussed above, Robinson has not shown that he suffered a violation of his due process rights related to the sexual assault or the investigation that followed. Additionally, the investigation report shows that Garvey participated in the meeting where WSH staff and defendant Brydge discussed Robinson's allegations, indicating that Garvey did not neglect him altogether. Finally, as a professional, Garvey is entitled to the <u>Youngberg</u> presumption that she acted in a manner consistent with accepted professional judgment, practice, or standards and nothing in Robinson's claim rebuts that presumption. For these reasons, Robinson's claims against Garvey are dismissed for failure to state a claim.

### G. Supervisory Claims

Robinson also complains that defendants Smith and Mawyer were negligent for not accepting responsibility for the actions of WSH employees. However, not only has Robinson

failed to state a claim for a constitutional violation committed by any staff person, he has pleaded no facts to show that Smith or Mawyer exhibited supervisory indifference or tacit authorization of any subordinates' misconduct. Accordingly, he cannot show that they violated his constitutional right to substantive due process.

Based on the foregoing, the motions to dismiss, ECF Nos. 33, 36, and 41, are **GRANTED**. Robinson's motion to amend, ECF No. 45, is **GRANTED**. All of Robinson's § 1983 claims against all defendants, in their individual and official capacities are **DISMISSED**.[5] Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over any state law claims that he raises. An appropriate order will be entered.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Robinson and to counsel of record for Respondent.

It is so **ORDERED**.

ENTERED: 02-21-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

[5] Although all the defendants alleged that they were entitled to qualified immunity, because Robinson wholly failed to state a cause of action for a constitutional violation, there is no need to conduct the qualified immunity analysis.